**UNITED STATES DISTRICT court
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARQUIS JENKINS,

       Petitioner,

v.                                 Case No. 2:11-CV-10469

STEVE RIVARD,

       Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Marquis Jenkins, incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for armed robbery,[1] attempting to escape from jail,[2] and being an habitual offender.[3] For the reasons that follow, the petition for writ of habeas corpus will be denied.

**I.  BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Kent County Circuit Court.

On the morning of January 11, 2006, Xochitl Torres cashed a $660.00 check at the bank. Ms. Torres then went down the street to a gas station, where she purchased some cigarettes, energy drinks, juice, and prepaid for gasoline for her car.

_____

[1]  Mich. Comp. Laws § 750.529; Mich. Stat. Ann. 28.797.

[2]  Mich. Comp. Laws § 750.197(2); Mich. Stat. Ann. 28.394(2).

[3]  Mich. Comp. Laws § 769.10; Mich. Stat. Ann. 28.1082.

(Tr. 5/10/06, pp. 18-19).  When Ms. Torres returned to her car, Petitioner and another man were standing there arguing and mentioned something about a gun before the other man walked away. (*Id.,* p. 23).  Ms. Torres could not pump gas because the pump was defective.  While Ms. Torres was attempting to push the assistance button, Petitioner came up behind her and demanded her money, saying that he had a gun. He poked something in the victim's back that felt like a gun. Torres had seen Petitioner at her bank earlier that morning. (*Id.,* pp. 19-21).  Petitioner reached into Ms. Torres' pocket and removed her cell phone and the bank envelope, which included both money and the victim's Michigan ID card.  Petitioner fled the scene and Ms. Torres attempted unsuccessfully to chase him on foot.  Ms. Torres returned to the gas station, where another customer offered to drive after Petitioner.  This chase also proved futile. (*Id.,* pp. 24-25).

The bank manager, Arlene Edwards, testified that Petitioner had been in the bank earlier that day and his demeanor had led her to fear that Petitioner was armed with a gun and was about to rob the bank. (Tr. 5/11/06, p. 14).

Petitioner was arrested by the police the next day for trespassing at Central High School in Grand Rapids.  The police testified that Petitioner's appearance matched that of the robbery suspect. (Tr. 5/10/06, pp. 54-55, 57).  While searching Petitioner's duffel bag, officers discovered a small silver cigarette lighter in the shape of a handgun. (*Id.,* pp. 56, 79).  Officers testified that there are real guns that are the size of the lighter. (Tr. 5/10/06, p. 87; Tr. 5/11/06, p. 129).  The SIM card from Ms. Torres' stolen phone was located by police in Petitioner's cell phone. (Tr. 5/11/06, p. 109).  New shoes, new t-shirts, and a new watch were also found in Petitioner's duffle bag. (*Id.,* pp. 126-128)

2

Petitioner confessed to robbing the victim, but denied having a gun. Petitioner acknowledged that the lighter that had been recovered from his duffel bag may have been in his hand during the robbery. Petitioner indicated that he used the money that he had stolen from the victim to buy new clothes and shoes. (*Id.,* pp. 114-15). During a subsequent search of Petitioner's hotel room, police found Ms. Torres' Michigan ID card wrapped inside of Petitioner's birth certificate in a dresser drawer. The victim's cell phone cover was also recovered from the room and cell phone pieces were scattered all over the room. The officers also found clothing that was similar to that worn by the robber. (Tr. 5/10/06, p. 34; Tr. 5/11/06, pp. 39-40, 44, 48). The police did not find any money or a weapon during the search of the hotel room. (Tr. 5/11/06, p. 55; Tr. 5/12/06, p. 14).

After being arrested, Petitioner was detained at the Kent County Jail. (Tr. 5/10/06, p. 88). On the afternoon of his arrest, Petitioner attempted to get in line and slip out of the jail along with other prisoners who were being released. (Tr. 5/11/06, p. 68). Petitioner managed to get through the first set of doors, where he attempted to disguise his face with toothpaste and a hood. (*Id.,* pp. 72, 78). After being caught, Petitioner confessed to jail personnel that he was trying to escape. Petitioner also confessed to having a knife on his person, which was discovered in a subsequent search. (*Id.,* pp. 94, 96-97).

Petitioner's conviction was affirmed on appeal. *People v. Jenkins,* No. 272217 (Mich. Ct. App. December 11, 2007), *leave to appeal denied at* 746 N.W. 2d 89 (Mich. 2008). Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. Jenkins,* Case ## 06-

3

01490-FH; 06-00908-FC (Kent County Circuit Court, April 30, 2009). The Michigan appellate courts denied Petitioner's post-conviction appeal. *People v. Jenkins*, No. 295547 (Mich. Ct. App. February 10, 2010), *leave to appeal denied at* 787 N.W. 2d 505 (Mich. 2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant was denied due process of law because the evidence against him showed that he attempted to leave the jail without being discharged rather than attempted to escape and the statute he was charged with violating does not apply to attempting to leave the jail without being discharged.

II. Defendant was deprived of effective assistance of counsel by his attorney's failure to request an instruction to the jury that it should not convict defendant of jail escape on attempt theory if it found that he only intended to leave custody by being mistakenly released.

III. Defendant's conviction for armed robbery should be vacated and the defendant should be resentenced on the lesser included offense of robbery unarmed, as the prosecutor failed to present legally sufficient evidence that Mr. Jenkins possessed a weapon contrary to his constitutional right to due process of the law. US Cons, Amends XIV, Mich. Const. Art 1,Sect 17.

IV. Defendant was denied the right to effective assistance of trial counsel where trial counsel failed to inform defendant that armed robbery carried a potential life sentencde [sic.] and also failed to inpeach [sic.] the wholly incredible testimony of the victim regarding the alleged use of a weapon during the robbery.

V. Defendant is entitled to post conviction relief under either, statutory or court rule, and can show cause and prejudice by the ineffective assistance of his appellate attorney on appeal as of right provided.

## II.  STANDARD

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a

5

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.*  ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  DISCUSSION

**A. Claim # 1.  The claim that there was insufficient evidence to convict Petitioner of attempting to escape jail.**

Petitioner first argues that there was insufficient evidence to convict him of attempting to escape from jail, because his act of attempting to leave the Kent County Jail by tricking jail personnel into releasing him by mistake does not amount to escape under Michigan's jail escape statute unless he had been successful in leaving the jail.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

6

This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard.  *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses.  *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

The Michigan Court of Appeals concluded that Petitioner's act of inducing jail personnel into releasing him from jail by mistake constituted an attempt to escape

under M.C.L.A. 750.197(2) and that it was not necessary under this statute for

Petitioner to have successfully left the jail in order to be convicted. *Jenkins,* Slip. Op.

at * 2.  Specifically, the Michigan Court of Appeals rejected Petitioner's contention that

the definition of escape under the statute must exclude leaving the jail without

permission. *Id.*  The Michigan Court of Appeals further concluded that there was

sufficient evidence to convict Petitioner of attempting to escape from jail:

> Here, defendant admitted in his signed statement that he tried to "get out for free," and that he intended to leave the jail to go home. He planned his departure and purposely hid until he could blend in with a group of prisoners who were being released.  He tried to disguise himself and pretended to be someone else.  The prosecution presented additional evidence that defendant knew that he was not authorized to leave.  He had been asked his clothing sizes and was aware that he would be moved out of the intake area and into the residence area of the jail.   A reasonable jury could conclude that defendant knew he was wrongly removing himself from the restraint of jail. He did not use force, and so did not "break" from the jail, but a reasonable jury could find, beyond a reasonable doubt, that he attempted to depart from legal custody or remove himself from the restraint imposed by being held in the jail.   He attempted to escape and the evidence sufficiently supported his conviction. The fact that defendant might also have been guilty of "leaving without being discharged" had he actually been successful is irrelevant because he was not charged with an attempt to violate that prohibition in the statute.

*Jenkins,* Slip. Op. at * 2-3 (internal citation omitted).

M.C.L.A. 750.197(2); M.S.A. § 28.394(2) provides as follows:

> A person lawfully imprisoned in a jail or place of confinement established by law, awaiting examination, trial, arraignment, or sentence for a felony; or after sentence for a felony awaiting or during transfer to or from a prison, who breaks the jail or place of confinement and escapes; who breaks the jail, although no escape is actually made; who escapes; who leaves the jail or place of confinement without being discharged from the jail or place of confinement by due process of law; who breaks or escapes while in or being transferred to or from a courtroom or courthouse, or a place where court is being held; or who attempts to break or escape from the jail or place of confinement is guilty of a felony.

8

The elements of jail escape are that:

(1) the defendant was lawfully imprisoned in a jail or other place of confinement while awaiting legal proceedings or transfer to prison, and

(2) the defendant broke or attempted to break the jail or place of confinement, regardless of whether an escape was actually made.

*People v. Fox*, 591 N.W.2d 384, 392 (Mich. Ct. App.1998).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner attempted to escape from jail while awaiting arraignment for a felony.  Petitioner does not dispute that he was lawfully imprisoned in jail at the time of the incident or that he was awaiting arraignment on his pending armed robbery charge. Petitioner admitted that he intended to "get out for free" from the jail, purposefully hid until he could blend in with prisoners who were being lawfully released, and tried to disguise his identity by using toothpaste and a hood.  Petitioner had been asked his clothing size by jail personnel and was aware that he would be moved from the intake area and into the residential area of the jail.  Under these facts, a rational trier of fact could conclude that Petitioner "attempted to break the jail or place of confinement". Moreover the fact that Petitioner did not successfully effectuate the escape was not a necessary element of the offense under Michigan law.  Accordingly, the Michigan Court of Appeals did not unreasonably apply clearly established law in rejecting Petitioner's claim.

To the extent that Petitioner contends that his act of inducing jail personnel to release him by mistake should not, as a matter of law, constitute an attempt to escape under M.C.L.A. 750.197(2), he would not be entitled to habeas relief.  State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975).

9

What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002).  Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes."  *See Lakin v. Stine,* 80 Fed. App'x. 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).  A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.  *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998).  In the present case, the Michigan Court of Appeals concluded that Petitioner's act of attempting to trick jail personnel into releasing him by mistake constituted an attempt to escape under Michigan's jail escape statute and that it was not necessary for Petitioner to have actually left the jail in order for him to be prosecuted under that statute.  Because this court must defer to a state appellate court's construction of the elements of state crimes, Petitioner would not be entitled to habeas relief on his first claim.

**B.  Claim # 2.  The claim that trial counsel was ineffective for failing to request a jury instruction that Petitioner could not be convicted of jail escape based upon an attempt to be mistakenly released.**

Petitioner next contends that trial counsel was ineffective for failing to request a jury instruction which informed the jurors that they could not convict Petitioner for attempting to escape based upon Petitioner's attempt to be mistakenly released.

The Michigan Court of Appeals rejected Petitioner's claim:

Again, defendant was not charged or convicted under the portion of the statute that proscribes leaving without being discharged from the jail by due process of law. That portion of the statute was not at issue in the trial court. Therefore, if counsel had requested an instruction regarding an alternate circumstance for which the defendant was not charged, the trial court would have denied counsel's request. Further, defendant's claim that his attempt to be mistakenly released is merely an attempt to leave without being

10

discharged by due process of law is a novel legal argument, and counsel is not ineffective for failing to raise a novel legal argument.

*Jenkins,* Slip. Op. at * 3 (internal citation omitted).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland's* test for prejudice is a demanding one.  'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Richter*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

11

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

In the present case, the Michigan Court of Appeals determined that as a matter of state law, Petitioner was not entitled to an instruction that he could not be convicted of attempting to escape from jail if he was mistakenly released because Petitioner had not been charged or convicted under the portion of the Michigan jail escape statute that prohibits a defendant from leaving without being discharged from the jail by due process of law. In analyzing Petitioner's claim that counsel was ineffective for failing to

12

request such an instruction, this expression of state law is binding on this court. *See Strayhorn v. Booker,* 718 F. Supp. 2d 846, 870 (E.D. Mich. 2010) (internal citations omitted).  Because Petitioner's proposed instruction was inappropriate under state law, counsel was not ineffective for failing to request such an instruction.  *Id;, See also Mitzel v. Tate,* 267 F. 3d 524, 538 (6th Cir. 2001).  Moreover, as the Michigan Court of Appeals noted, Petitioner's argument that his attempt to be mistakenly released was merely an attempt to leave without being discharged by due process of law is a novel legal argument.  As a general matter, a defense counsel has no duty to present novel theories or arguments.  *See e.g. Byrd v. Trombley,* 580 F. Supp. 2d 542, 557 (E.D. Mich. 2008).  Accordingly, the Michigan Court of Appeals did not unreasonably apply *Strickland* in rejecting Petitioner's second claim.

### C.  Claims ## 3, 4, and 5.   The procedurally defaulted claims.

Respondent contends that Petitioner's remaining claims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an

13

extraordinary case, where a constitutional error has probably resulted in the conviction

of one who is actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default. *Murray v.*

*Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence

requires a petitioner to support the allegations of constitutional error with new reliable

evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*

*v. United States*, 523 U.S. 614, 624 (1998).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could

have been raised on direct appeal, absent a showing of good cause for the failure to

raise such grounds previously and actual prejudice resulting therefrom. For purposes

of a conviction following a trial, "actual prejudice" means that "but for the alleged error,

the defendant would have had a reasonably likely chance of acquittal." M.C.R.

6.508(D)(3)(b)(I).

The Supreme Court has noted that "a procedural default does not bar

consideration of a federal claim on either direct or habeas review unless the last state

court rendering a judgment in the case 'clearly and expressly' states that its judgment

rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last

state court judgment contains no reasoning, but simply affirms the conviction in a

standard order, the federal habeas court must look to the last reasoned state court

judgment rejecting the federal claim and apply a presumption that later unexplained

orders upholding the judgment or rejecting the same claim rested upon the same

14

ground.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained.  *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

In the present case, the Kent County Circuit Court judge, in rejecting Petitioner's motion for relief from judgment, mentioned that M.C.R. 6.508(D)(3) provides that a motion for relief from judgment cannot be granted unless the defendant demonstrates good cause for failing to raise the grounds on appeal as well as actual prejudice from the alleged irregularities.  Although noting that Petitioner attempted to satisfy the "good cause" requirement by alleging that appellate counsel was ineffective for failing to raise on direct appeal the issues contained in the motion for relief from judgment, the trial judge concluded that appellate counsel was not ineffective for failing to raise what amounted to meritless claims, therefore, Petitioner's motion for relief from judgment "could be denied for failing to satisfy the first prong of the analysis."  The judge further concluded that Petitioner had failed to establish "actual prejudice", i.e., that he would have had a reasonably likely chance of an acquittal at trial but for counsel's error.

15

*People v. Jenkins,* No. 06-01490-FH; 06-00908-FC, * 2 (Kent County Circuit Court, April 30, 2009).

Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *see also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of Petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's remaining claims are procedurally defaulted.[4]

With respect to his post-conviction claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel

---

[4] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291; *Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751

(1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

> *Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying

good arguments-those that, in the words of the great advocate John W. Davis, 'go for

the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463

U.S. at 753 (citations omitted).

> The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

> *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel." *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy"

is the "process of 'winnowing out weaker arguments on appeal and focusing on' those

more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at

751-52). "Generally, only when ignored issues are clearly stronger than those

presented will the presumption of effective assistance of appellate counsel be

overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel

may deliver deficient performance and prejudice a defendant by omitting a "dead-bang

17

winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment.  Appellate counsel filed an appellate brief which raised the first two claims that Petitioner has presented in his petition.  Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Kent County Circuit Court in rejecting Petitioner's post-conviction claims and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); *cert. den.* 131 S. Ct. 1013 (2011) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, Petitioner has failed to show cause to excuse his default.

18

Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claims are insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the court declined to review the procedurally defaulted claims on the merits. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999).

Finally, assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Kent County Circuit Court in rejecting Petitioner's post-conviction motion and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, Petitioner has failed to show that his post-conviction claims have any merit. In particular, the reasons justifying the denial of the claims that Petitioner raised for the first time in his post-conviction motion were "ably articulated by the" state trial court, therefore, "the issuance of a full written opinion" by this court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,*

19

328 Fed. App'x. 323, 324 (6th Cir. 2009).  Petitioner is not entitled to habeas relief on

his remaining claims.

### D.  Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must

issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of

appealability may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas

claim on the merits, the substantial showing threshold is met if the petitioner

demonstrates that reasonable jurists would find the court's assessment of the claim

debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further."

*Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not

conduct a full merits review, but must limit its examination to a threshold inquiry into the

underlying merits of the claim.  *Id.* at 336–37.

Likewise, when a district court denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claims, a certificate of

appealability should issue, and an appeal of the district court's order may be taken, if

the petitioner shows that jurists of reason would find it debatable whether the petitioner

states a valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling.

*Slack,* 529 U.S. at 484.  When a plain procedural bar is present and the district court is

correct to invoke it to dispose of the case, a reasonable jurist could not conclude either

that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the court will deny Petitioner a certificate of appealability.

### IV. CONCLUSION

IT IS ORDERED that Petitioner Marquis Jenkins' petition for writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

      s/Robert H. Cleland    
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 31, 2012, by electronic and/or ordinary mail.

      s/Lisa Wagner     
     Case Manager and Deputy Clerk
     (313) 234-5522